UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SMART APPAREL (U.S.), INC.,<br><br>             Plaintiff,<br><br>   v.<br><br>NORDSTROM, INC.,<br><br>             Defendants. | Case No. 2:23-cv-01754-TLF<br><br>ORDER GRANTING MOTION TO DISMISS (DKT. 28); AND ORDER DENYING MOTION TO STAY (DKT. 31) AS MOOT |

This matter comes before the Court on defendant Nordstrom, Inc.'s motion to dismiss plaintiff Smart Apparel (U.S.) Inc.'s First Amended Complaint. Dkt. 28. For the reasons discussed below, the Court GRANTS defendant's motion to dismiss.

BACKGROUND

A. Facts

Plaintiff Smart Apparel (U.S.), Inc. ("Smart Apparel"), an apparel manufacturing and wholesale distribution business, brings this action against defendant Nordstrom, Inc. ("Nordstrom"), a clothing, shoes, and accessories retailer, for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and breach of contract implied in fact. Dkt. 25, First Amended Complaint. The parties' dispute arises from Nordstrom's cancellation of purchase orders placed with Smart Apparel upon belief that Smart Apparel had violated provisions of the Terms and Conditions of the purchase order agreement regarding forced labor. *Id*. at 2.

ORDER GRANTING MOTION TO DISMISS (DKT. 28);
AND ORDER DENYING MOTION TO STAY (DKT. 31)
AS MOOT - 1

Smart Apparel utilizes production facilities that are mainly located in Southeast Asia. Dkt. 25, First Amended Complaint at 1-2. Nordstrom places orders with Smart Apparel by email, Smart Apparel then purchases materials, manufactures the merchandise, and ships the finished product to its U.S. warehouses. *Id.* at 7-8. Once the merchandise clears customs, Smart Apparel warehouses it and arranges for Nordstrom to pick it up. *Id.* at 6.

On December 27, 2022, U.S. Customs and Border Protection issued a press release (the "CBP Press Release") announcing that, as of December 5, 2022, it was detaining merchandise from Smart Apparel's parent company, Zhejiang Sunrise Garment Group Co. Ltd. ("Sunrise"), on suspicion of violations of the Countering America's Adversaries Through Sanctions Act (CAATSA). Dkt. 25 at 11. The CBP Press Release indicated that this action was based on evidence that Sunrise, among other companies, used North Korean labor in its supply chain in violation of CAATSA. Dkt. 29, Declaration of David Perez, at 5-6 (Exhibit 1). As stated in the CBP Press Release:

> CAATSA prohibits the entry of goods, wares, and articles mined, produced, or manufactured wholly or in part by North Korean nationals or North Korean citizens anywhere in the world, unless clear and convincing evidence is provided that such goods were not made with convict labor, forced labor, or indentured labor under penal sanctions.

*Id*. CBP announced that it would detain merchandise at ports of entry unless there was "clear and convincing evidence that forced labor was not present at any stage of the production process." *Id*.

At the time of the CBP Press Release, Nordstrom had issued electronic purchase orders, which incorporated the Purchase Order Terms and Conditions (the "Terms and Conditions"). Dkt. 25 at 8-9.

ORDER GRANTING MOTION TO DISMISS (DKT. 28);
AND ORDER DENYING MOTION TO STAY (DKT. 31)
AS MOOT - 2

On January 13, 2023, Nordstrom notified Smart Apparel by email that it was cancelling all purchase orders that had not yet cleared customs in the United States. Dkt. 25, First Amended Complaint at 9. Nordstrom informed Smart Apparel that the cancellation was based on "compelling reasons to believe that the manufacture of Smart Apparel products has involved violations of our Purchase Order Terms and Conditions, including the provisions regarding forced labor." *Id*. at 10.

B. Procedural History

Smart Apparel commenced this action in King County Superior Court. Dkt. 25 at 5. On November 16, 2023, Nordstrom removed the action to this Court. Dkt. 1. On December 7, 2023, Nordstrom filed a motion to dismiss. Dkt. 19. On December 28, 2023 Smart Apparel filed the First Amended Complaint. Dkt. 25. On January 11, 2024, Nordstrom moved to dismiss the First Amended Complaint. Dkt. 28. On January 31, 2024 Nordstrom filed a motion to stay discovery pending the motion to dismiss. Dkt. 31.

DISCUSSION

A. Standard

The Court's review of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is limited to the complaint, documents incorporated into the complaint by reference, and documents of which the Court may take judicial notice. *Khoja v. Orexigen Therapeutics Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). A motion to dismiss may be granted only if plaintiff's complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted). However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

While the Court must accept all the allegations contained in the complaint as true, the Court does not accept as true a "legal conclusion couched as a factual allegation." *Id.*

B. <u>Analysis</u>

1. **Incorporation by Reference**

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). "There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Id.* "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."

ORDER GRANTING MOTION TO DISMISS (DKT. 28);
AND ORDER DENYING MOTION TO STAY (DKT. 31)
AS MOOT - 4

*U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

Here, Smart Apparel attached the purchase order Terms and Conditions to the First Amended Complaint. Dkt. 25-1, Ex. A. Although Smart Apparel did not attach the CBP Press Release to the First Amended Complaint, it included a link to the press release from the U.S. Customs and Border Protection website. Dkt. 25 at 2.[1] Because Smart Apparel refers to the contract and the CBP Press Release in the First Amended Complaint and both documents form the basis of its claims against Nordstrom, the Court will treat them as part of the First Amended Complaint for purposes of this motion. *Ritchie*, 342 F.3d at 908.

### 2. Breach of Contract

Smart Apparel alleges that Nordstrom's cancellation of the orders was a breach of contract because Nordstrom did not have "reason to believe" that violations of the Terms and Conditions had occurred. Dkt. 25, at 19. Nordstrom argues that it was acting within the broad discretion permitted by the Terms and Conditions when it cancelled the orders because the CBP Press Release provided a "reason to believe" that Smart Apparel violated the Terms and Conditions. Dkt. 28, Motion to Dismiss, at 11-12.

A breach of contract claim requires a showing that there was a duty owed under contract, that duty was breached, and the claimant sustained harm as a result of the breach. *Nw. Indep. Forest Mfrs. v. Dep't. of Labor & Indus.*, 78 Wn. App. 707, 712

---

[1] https://www.cbp.gov/newsroom/national-media-release/cbp-enforces-countering-americas-adversaries-through-sanctions (accessed on 3-8-2024).

ORDER GRANTING MOTION TO DISMISS (DKT. 28);
AND ORDER DENYING MOTION TO STAY (DKT. 31)
AS MOOT - 5

(1995). Conduct that is permitted under the contract does not constitute breach. *See Myers v. State,* 152 Wn. App. 823, 829 (2009).

Contract interpretation is generally a question of law for the Court. *Berg v. Hudesman,* 115 Wn.2d 657, 663 (1990). Washington courts follow the "objective manifestation" theory of contracts and give "terms within a contract their ordinary, usual, and popular meaning unless the entirety of the contract clearly demonstrates a contrary intent." *Hearst Commc'ns, Inc. v. Seattle Times*, 154 Wn.2d 493, 504 (2005). The Court is required to "determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." *Id.* at 503. The Court will impute an intention that corresponds to the reasonable meaning of words used in the contract. *Id.* In situations where the Court is able to ascertain their intent from words used in the contract, the Court will not consider the parties' subjective intent because it would be irrelevant. *Id.* at 504.

The Court cannot consider words and phrases in isolation, the Court must consider the contract in its entirety giving effect to each provision. *Moeller v. Farmers Ins. Co. of Wash.*, 173 Wn.2d 264, 271-72 (2011). "If the language [of a contract] is clear and unambiguous the court must enforce the contract as written; it may not modify the contract or create ambiguity where none exists." *Lehrer v. Dep't of Soc. & Health Servs.*, 101 Wn. App. 509, 515 (2000).

A term is ambiguous if it is susceptible to more than one reasonable interpretation. *Holden v. Farmers Ins. Co. of Wash.*, 169 Wn.2d 750, 756 (2010). When contract language is ambiguous, the goal of contract interpretation is to determine the

ORDER GRANTING MOTION TO DISMISS (DKT. 28);
AND ORDER DENYING MOTION TO STAY (DKT. 31)
AS MOOT - 6

intent of the parties. *Jones Assocs., Inc. v. Eastside Props., Inc.*, 41 Wn. App. 462, 467 (1985). Ambiguous terms are strictly construed against the drafter. *Id.* at 468.

In this case, there are four provisions of the Terms and Conditions at issue, Paragraphs 4, 7, 8, and 9, which contain provisions regarding forced labor. The Terms and Conditions provide, in relevant part:

> 4. Purchaser or Purchaser's agent may refuse delivery or return the merchandise F.C.A. Purchaser's dock for:
>
>> D. Merchandise which Purchaser has reason to believe is not as represented or as warranted, including as set forth in Section 9[.]
>>
>> E. Shipments which Purchaser has reason to believe are not in compliance with the provisions of the applicable Vendor Purchasing Guide,[2] including without limitation all quality standards, labeling requirements, transportation terms and conditions, packing instructions, invoicing instructions, US or Canada customs requirements, and child or forced labor requirements[.]
>
> Seller warrants and certifies:
>
> 7. that it does not and will not in violation of applicable law, custom or practice. . . (b) utilize, through its own operation or its supply chain, use in the operation of its business any involuntary labor of any kind including child labor, prison labor, state-sponsored forced labor, indentured or bonded labor[.]
>
> 8. that neither Seller nor any party working on Seller's behalf is a Sanctioned Person or engages in any dealings, directly or indirectly, with a Sanctioned Person or Sanctioned Territory in connection with this purchase order, and no Sanctioned Person has any interest of any nature whatsoever in Seller or any party working on Seller's behalf. "Sanctioned Territory" means a country, territory, or a region within a specific country subject to comprehensive sanctions or other trade restrictions of the US government (e.g., the Crimea region, Cuba, Iran, North Korea, Russia and Syria as of March 2022, subject to change). "Sanctioned Person" means a person, entity or government . . . subject to trade restrictions under United States law, including . . . the Countering America's Adversaries with Sanctions Act[.]
>
> 9. That the merchandise shipped under any purchase order . . .

---

[2] Paragraph 1 defines the Vendor Purchasing Guide to include the Terms and Conditions. Dkt. 25-1, Ex. A, at 2.

ORDER GRANTING MOTION TO DISMISS (DKT. 28);
AND ORDER DENYING MOTION TO STAY (DKT. 31)
AS MOOT - 7

> A. was produced and processed in strict compliance with all applicable federal, state/provincial or local laws, regulations, orders, testing requirements, and ordinances of the country of origin and the country of destination, including but not limited to . . . labor, trade sanctions, export [or] import/customs . . . laws and regulations[.]

Dkt. 25-1, First Amended Complaint, Ex. A, at 2-3.

The phrase "reason to believe" is language used in the CBP regulations to enforce CAATSA.[3] "Reason to believe" is a phrase that has been interpreted in another regulatory context to give a U.S. Government agency, the Commodity Futures Trading Commission, discretion to determine whether an emergency exists. *Bd. of Trade of City of Chicago v. Commodity Futures Trading Comm'n,* 605 F.2d 1016, 2021-2022 (7th Cir. 1979). The Court in *Bd. of Trade of City of Chicago v. Commodity Futures Trading Comm'n* found the "reason to believe" language clearly allowed the Commission to exercise discretion when deciding whether an emergency existed. *Id.* at 1022 & n. 7.

In this case, a plain reading of the contract reveals that Nordstrom was allowed to refuse delivery if it had a reason to believe that a violation of the "representation or warranty" occurred, including: (1) utilizing any involuntary labor of any kind directly or in its supply chain, or (2) engaging with a Sanctioned Person or Territory, defined to include an entity subject to trade restrictions under CAATSA, or (3) a Sanctioned Person having any interest in Smart Apparel or anyone working on Smart Apparel's behalf, or (4) producing and processing merchandise not in compliance with applicable laws, regulations, orders, testing requirements, and ordinances of the country of origin and country of destination. Dkt. 25-1, First Amended Complaint, Ex. A, at 2-3. In this

---

[3] CAATSA was enacted on August 2, 2017. *See* Countering America's Adversaries Through Sanctions Act, Pub. L. No. 115-44, 131 Stat. 886 (August 2,2017), Title III, Sanctions with Respect to North Korea, §§ 302B, 321 (b), 333; 22 U.S.C. § 9241 (a); *see also* 19 U.S.C. § 1307; 19 C.F.R. §§ 12.42-12.44.

ORDER GRANTING MOTION TO DISMISS (DKT. 28);
AND ORDER DENYING MOTION TO STAY (DKT. 31)
AS MOOT - 8

case, the Court is able to ascertain the parties' intent from words used in the contract, thus the Court will not consider the parties' subjective intent because it would be irrelevant. *Hearst Commc'ns, Inc. v. Seattle Times*, 154 Wn.2d 493, 503 (2005).

The CBP Press Release provided notice that CBP had found reason to detain merchandise produced or manufactured by Sunrise "as a result of an investigation indicating that [Sunrise] used North Korean labor in [its] supply chain" in violation of CAATSA. Dkt. 25 at 2; Dkt. 29, Declaration of David Perez, at 5-6 (Exhibit 1).

Nordstrom argues that the press release provided reason to believe that Smart Apparel had violated the Terms and Conditions in four ways: (1) under Paragraph 8, it indicated that Smart Apparel had dealings, directly or indirectly with North Korea and Sunrise, a Sanctioned Person, (2) under Paragraph 4, Nordstrom was permitted to cancel any shipment sent out while Sunrise, a Sanctioned Person, had any interest in Smart Apparel, as authorized by Paragraph 8, (3) under Paragraph 9, Smart Apparel warranted that the merchandise was produced in accordance with all applicable federal, state/provincial, or local laws, and (4) under Paragraph 7, Smart Apparel warranted that it did not utilize involuntary labor of any kind, and the CBP Press Release indicated that CBP had reason to believe that Smart Apparel, through its shared supply chain, had violated federal laws and utilized forced labor. Dkt. 28, Motion to Dismiss, at 8-9.

Smart Apparel argues in response to Nordstrom's first argument, that Sunrise is not a Sanctioned Person and the press release did not indicate that Smart Apparel had dealings with Sunrise or North Korea in connection with the orders. Dkt. 30 at 15-21. Smart Apparel's argument does not align with the plain language of the contract which provides that a Sanctioned Person is "a person, entity or government . . . subject to

ORDER GRANTING MOTION TO DISMISS (DKT. 28);
AND ORDER DENYING MOTION TO STAY (DKT. 31)
AS MOOT - 9

trade restrictions under United States law, including . . . the Countering America's Adversaries with Sanctions Act[.]" Dkt. 25-1, Ex. A, at 3. The press release indicated that CBP would detain merchandise from Sunshine at the border unless "there [was] clear and convincing evidence that forced labor was not present at any stage of the production process." Dkt. 29 at 5. Read together with Paragraph 4, when the CBP issued a press release stating it had a reason to believe that Sunrise was a Sanctioned Person, as the U.S. Government indicated that it was subject to trade restrictions, this notification would be sufficient under the plain meaning of the contract to allow Nordstrom to refuse delivery.

Furthermore, the facts alleged in the First Amended Complaint and incorporated by reference show that Sunshine's relationship with Smart Apparel was that Sunshine was part of a supply chain for Smart Apparel. Dkt. 25, First Amended Complaint, at 3, 9.

Smart Apparel's arguments regarding Nordstrom's other reasons similarly fail. Smart Apparel argues that a violation of Paragraph 8 of the Terms and Conditions, which states that Smart Apparel warrants that "no Sanctioned Person has any interest of any nature in [Smart Apparel] or any party working on [Smart Apparel's] behalf" would not permit cancellation of the Orders. Dkt. 30 at 21. However, a plain reading of Paragraph 4 allows for cancellation for "[s]hipments which [Nordstrom] has reason to believe are not in compliance with the [Terms and Conditions]" which would allow for cancellation of a shipment that was sent out while a Sanctioned Person had an interest in Smart Apparel, as provided for in Paragraph 8. Dkt. 25-1, Ex. A, at 2.

Smart Apparel raises the same argument regarding Paragraph 7, that Paragraph 4 does not apply – yet, read together, Paragraph 4 allows for a cancellation of

shipments which Nordstrom had reason to believe violated the Terms and Conditions, including the provisions in Paragraph 7 relating to the use of forced labor in its supply chain. Dkt 25-1, Ex. A, at 3. *See Myers v. State,* 152 Wn. App. 823, 828-829 (2009) (the trial court properly dismissed a breach of contract cause of action based on the contract's clear express terms and unambiguous rights; investigator reached the conclusion that neglect occurred – and even though the finding of neglect was later overturned during an administrative appeal process – the investigator's initial determination was sufficient to establish neglect under the terms of the contract thereby allowing DSHS to terminate the contract).

Defendant Nordstrom had four sufficient bases to refuse delivery of the merchandise that had not cleared customs at the time that the CBP Press Release was issued. Therefore, as a matter of law, the First Amended Complaint fails to allege sufficient facts to plausibly state a claim for a cause of action that Nordstrom breached the contract. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Hard 2 Find Accessories, Inc. v. Amazon.com, Inc,* 58 F. Supp.3d 1166, 1171-1173 (W.D. Wash. 2014), *aff'd sub nom. Hard2Find Accessories, Inc. v. Amazon.com, Inc*., 691 Fed. App'x. 406 (9th Cir. 2017) (If the complaint alleges no facts to plausibly show a duty, or breach of any provision of the contract, under the plain language of the contract, the case should be dismissed with prejudice).

### 3. Breach of Implied Covenant of Good Faith and Fair Dealing

Smart Apparel argues that Nordstrom breached its duty of good faith and fair dealing for the same reasons it argues Nordstrom breached the contract: Smart Apparel alleges that Nordstrom did not have a good faith reason to believe that grounds existed

to cancel the orders at issue. Dkt. 25, First Amended Complaint, at 20-21. Nordstrom argues that it was authorized to cancel the orders under the contract and therefore it did not breach its duty by doing so. Dkt. 28, Motion to Dismiss, at 12-13.

In Washington, the implied duty of good faith and fair dealing arises where one party to a contract has discretion to determine the terms of the contract. *Rekhter v. Dep't. of Soc. and Health Servs.*, 180 Wn.2d 102, 113 (2014). Breach of good faith and fair dealing does not require breach of the terms of the contract. *Id*. at 111-112. "But covenants of good faith do not trump express terms or unambiguous rights in a contract." *Myers v. State*, 152 Wn. App. 823, 828 (2009). Instead, it applies to the performance of specific contractual duties. *Johnson v. Yousoofian*, 84 Wn. App. 755, 762 (1996). If no duty exists under the contract, there is no duty to perform in good faith. *Id*.

Smart Apparel argues that "Nordstrom canceled the Subject Orders based solely on the CBP Press Release without conducting an adequate (or any) investigation whether the CBP Press Release implicated Smart Apparel" which constituted breach of the implied duty of good faith and fair dealing. Dkt. 25 at 20-21. Smart Apparel points to the requirement that Nordstrom have a "reason to believe" in order to cancel the Subject Orders as requiring this investigation. *Id.* at 20.

The Court has already determined that the terms of the contract are unambiguous and that he CBP Press Release provided a reason for Nordstrom to believe that the terms of the contract had been violated and to cancel the orders. Therefore, the amended complaint fails to allege sufficient facts to plausibly state a

claim for a cause of action that Nordstrom breached the duty of good faith and fair dealing.

### 4. Promissory Estoppel and Breach of Contract Implied in Fact

In Washington, a party bringing a promissory estoppel claim must show:

> [a] promise which (2) the promissor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise.

*Havens v. C & D Plastics, Inc.*, 124 Wn.2d 158, 172 (1994) (internal quotation marks omitted) (quoting *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 259 n.2 (1980)) However, where there is a valid governing contract, the doctrine of promissory estoppel does not apply. *Klinke,* 94 Wn.2d at 261 n.4.

A contract implied in law, or quasi contract, arises where no true contractual relationship exists, but notions of fairness and justice determine that one party has unjustly retained money or benefits from another. The elements of this equitable obligation are "(1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment." *Young v. Young*, 164 Wn.2d 477, 484-85 (2008). Unjust enrichment is remedied by the repayment of the value of the benefit so retained. However, under Washington law, when there is an express contract, a quasi-contract claim may not be brought where the contract controls. *Chandler v. Wash. Toll Bridge Auth.*, 17 Wn.2d 591, 604 (1943).

A valid contract governed the conduct alleged by Smart Apparel in the amended complaint. Therefore, the amended complaint fails to allege a claim for promissory estoppel or breach of contract implied in fact.

ORDER GRANTING MOTION TO DISMISS (DKT. 28);
AND ORDER DENYING MOTION TO STAY (DKT. 31)
AS MOOT - 13

**5. Denial of Leave to Amend**

The Court should dismiss without prejudice and with leave to amend "'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Systems, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). A case may be dismissed with prejudice and without leave to amend if amendment would be futile. *Id.; Shermoen v. U.S.*, 982 F.2d 1312, 1319-1321 (9th Cir. 1992); *Hard 2 Find Accessories, Inc. v. Amazon.com, Inc*, 58 F. Supp.3d 1166, 1177 (W.D. Wash. 2014) *aff'd sub nom. Hard2Find Accessories, Inc. v. Amazon.com, Inc.*, 691 Fed. App'x. 406 (9th Cir. 2017). The Court is not able to discern any possible cure for the deficiencies of Smart Apparel's amended complaint, therefore the Court finds that granting leave to amend would be futile.

### CONCLUSION

For the reasons stated above, the Court **GRANTS** Nordstrom's motion to dismiss (Dkt. 28) – with prejudice and without leave to amend. The motion to stay discovery pending the motion to dismiss (Dkt. 31) is **DENIED** as moot.

Dated this 11th day of March, 2024.

Theresa L. Fricke
United States Magistrate Judge

ORDER GRANTING MOTION TO DISMISS (DKT. 28);
AND ORDER DENYING MOTION TO STAY (DKT. 31)
AS MOOT - 14