1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6   SMART APPAREL US, INC.,

7                              Plaintiff,

8        v.

9   NORDSTROM, INC.,

10                          Defendants.

Case No. 2:23-cv-01754-TLF

ORDER GRANTING SMART
APPAREL'S MOTION FOR LEAVE
TO AMEND SECOND AMENDED
COMPLAINT

11        This matter comes before the Court on plaintiff Smart Apparel (U.S.), Inc.'s

12   ("Smart Apparel") Motion for Leave to Amend Second Amended Complaint. Dkt. 63.

13   Having considered the parties' submissions, the record, and the applicable law, the

14   Court GRANTS plaintiff's Motion for Leave to Amend Second Amended Complaint. In

15   this situation, the Court exercises its discretion to decline applying the law of the case

16   doctrine. Allowing plaintiff to amend the Second Amended Complaint is consistent with

17   Fed. R. Civ. P. 15 as there may be disputes of law and fact that were not apparent

18   when the Court considered the defendant's motion to dismiss, and amendment allows

19   the plaintiff to proceed on claims based on legal and factual theories that the defense

20   appears to be asserting in the answer.

21   **I.    Background**

22        Plaintiff asserts claims that relate to a commercial supply relationship between

23   plaintiff Smart Apparel, a manufacturer of menswear fashion, sportswear, and dress

24

25   ORDER GRANTING SMART APPAREL'S MOTION
     FOR LEAVE TO AMEND SECOND AMENDED
     COMPLAINT - 1

1  shirts and defendant Nordstrom, Inc. ("Nordstrom"), a clothing retailer. Dkt. 52, Second

2  Amended Complaint at 2.

3      Smart Apparel asserts Nordstrom's orders to Smart Apparel were made in two ways:

4  (1) hard orders, which reflected Nordstrom's specific purchasing needs, and (2)

5  replenishment orders, under which Smart Apparel warehoused merchandise in the

6  United States for Nordstrom to draw upon as demand rose. *Id.* at 6-7. According to the

7  Second Amended Complaint, "Nordstrom communicates its hard orders and

8  replenishment orders to Smart Apparel by sending periodic emails with 'work in

9  progress' spreadsheets to Smart Apparel, detailing Nordstrom's requirements for styles

10  and quantity of hard and replenishment merchandise, including price and other

11  information. Smart Apparel asserts these emails and spreadsheets function as requests

12  that Smart Apparel begin manufacturing the merchandise and as promises that

13  Nordstrom will purchase it. Smart Apparel alleges that, based on the inducement of

14  Nordstrom's emails requesting hard and replenishment merchandise and the parties'

15  longstanding course of conduct, Smart Apparel, at its own expense, purchases raw

16  materials, manufactures the merchandise and ships it to its U.S. warehouses." *Id*. at 7,

17  ¶31.

18      The Second Amended Complaint asserts that for hard orders, Nordstrom initially

19  communicated its demand and assigned purchase order numbers, but final purchase

20  orders typically issued six to nine months before the shipping window. *Id*. ¶32. For

21  replenishment orders, Nordstrom issued purchase orders only when retail need arose

22  and then arranged for pick-up of the merchandise from Smart Apparel's warehouses. *Id*.

23

24

25  ORDER GRANTING SMART APPAREL'S MOTION
FOR LEAVE TO AMEND SECOND AMENDED
COMPLAINT - 2

at 6-7, ¶¶ 30, 32. Smart Apparel asserts that "electronic purchase orders incorporate Nordstrom's terms and conditions." *Id*. at 7, ¶32.

On December 27, 2022, U.S Customs and Border Protection issued a press release ("CBP Press Release") stating merchandise from Smart Apparel's parent company, Zhejiang Sunrise Garment Group Co. Ltd., was subject to detention under the Countering America's Adversaries Through Sanctions Act based on suspected usage of North Korean labor. Dkt. 52 at 2. In response, Nordstrom cancelled all orders to Smart Apparel for which the merchandise had not yet cleared customs in the United States. *Id*.

From the arguments made in the motion to amend (Dkt. 63), the response (Dkt. 66), and reply (Dkt. 67), it appears the parties agree that three categories of orders are alleged in the Second Amended Complaint:

(1) *final purchase orders* totaling $1,185,303.16;

(2) $2,049,706.12 in *hard orders* (orders, but final purchase orders had not yet issued); and

(3) $3,517,676.71 in *replenishment orders* (orders, but final purchase orders had not yet issued).

The total amount of cancelled orders (all three categories of orders, combined) allegedly exceeded $6.7 million.

Smart Apparel filed suit asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and implied contract in fact. Dkt. 1-2. Nordstrom moved to dismiss and this Court dismissed the entire complaint, including contract and implied covenant claims, promissory estoppel, and the implied contract claim, explaining "[a] valid contract governed the conduct alleged by

ORDER GRANTING SMART APPAREL'S MOTION
FOR LEAVE TO AMEND SECOND AMENDED
COMPLAINT - 3

1    Smart Apparel in the amended complaint" and Washington law does not permit implied

2    contract theories where an express contract controls. *Id*. at 13 (citing *Klinke v. Famous*

3    *Recipe Fried Chicken*, 94 Wn.2d 255, 261 n.4 (1980); *Chandler v. Wash. Toll Bridge*

4    *Auth.*, 17 Wn.2d 591, 604 (1943)).

5        Smart Apparel filed a notice of appeal on April 9, 2024. Dkt. 42. The "Notice of Civil

6    Appeal and Representation Statement" states that Smart Apparel appealed "the

7    Judgment (Dkt. No. 37) . . . and all orders, rulings, and determinations subsumed within

8    the Judgment." Dkt. 42.

9        The Ninth Circuit reversed and remanded, holding Smart Apparel adequately alleged

10    breach of contract and breach of the implied covenant claims.[1] Smart Apparel asserts

11    there was no reason to argue the promissory estoppel claim or the implied contract

12    claim to the Ninth Circuit because, on appeal, only the express contract was at issue.

13    Dkt. 63 at 2.

14        After the Ninth Circuit issued the mandate, Smart Apparel filed a Second Amended

15    Complaint reasserting its breach of contract and implied covenant claims, while

16    reserving the right to reinstate the promissory estoppel and implied contract claims. Dkt.

17    52 at 1 n.1. Nordstrom filed an answer. Dkt. 56. In the answer, Nordstrom admitted to

18    having communicated "work in progress" spreadsheets sent by email. Dkt. 56 at 5, ¶31.

19    But Nordstrom also answered that "[t]he allegations in the second sentence of

20

21    [1] The Ninth Circuit's ruling was expressly premised on the existence of a binding express contract under

22    the parties' Terms and Conditions. *Smart Apparel (U.S.), Inc. v. Nordstrom, Inc.*, No. 24-2269, 2025 WL 973181, at *2 (9th Cir. Apr. 1, 2025). The Court evaluated Smart Apparel's breach of contract claim under

23    the "plain meaning of the agreement," and found that the CBP press release did not give Nordstrom reason to believe Smart Apparel violated the warranties. *Id*. The Court similarly assessed the implied

24    covenant of good faith and fair dealing in the context of the express contract, noting that Nordstrom's discretion to reject merchandise was limited by the duty to act in good faith. *Id*.

25    ORDER GRANTING SMART APPAREL'S MOTION
        FOR LEAVE TO AMEND SECOND AMENDED
        COMPLAINT - 4

paragraph 31 are Smart Apparel's conclusions of law to which no response is required. To the extent a response is required, Nordstrom denies the allegations. Nordstrom lacks knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 31 and therefore denies them." *Id.*

After the Court entered a new scheduling order with an amendment deadline of August 15, 2025, Smart Apparel timely moved for leave to amend its complaint to reassert its promissory estoppel and implied contract claims, which is opposed by Nordstrom. Dkt. 63, 64, 66, 67.

**Legal Standard**

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to amend pleadings "when justice so requires." The policy favoring amendments is "to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). The court is guided by the purpose of Rule 15, allowing plaintiff an opportunity to test their claim on the merits. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Leave to amend should liberally be granted when the underlying facts or circumstances show plaintiff may be able to state a claim. *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir. 1987). The Federal Rules of Civil Procedure should not be interpreted as a game where "'one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.'" *Foman,* 371 U.S. at 181-82 (quoting *Conley v. Gibson,* 355 U.S. 41, 48 (1957)) (overruled in part, on other grounds in *Bell Atlantic v. Twombly,* 550 U.S. 544, 560-61 (2007)).

Relevant factors include undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment. *Foman,* 371 U.S. at 182. An amendment is futile when "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

## II.     Discussion

### A.  The Ninth Circuit's Mandate Does Not Foreclose Amendment

When a case is decided by an appellate court and the remedy is a remand for further proceedings at the district court, the district court must proceed in a manner that respects the mandate; the mandate of the appellate court controls all matters within its scope. *Odima v. Westin Tucson Hotel,* 53 F.3d 1484, 1497 (9th Cir. 1995). Absent a mandate which explicitly directs to the contrary, a district court upon remand can permit the plaintiff to file additional pleadings. *Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir. 1986) (quotations omitted).

The Ninth Circuit's mandate does not independently bar amendment. The appellate court reversed the dismissal of Smart Apparel's breach of contract and the related implied covenant of good faith and fair dealing claim, but did not address promissory estoppel or implied contract in fact because Smart Apparel did not raise those issues on appeal. Issues not raised on appeal generally are not foreclosed by the mandate. *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012).

ORDER GRANTING SMART APPAREL'S MOTION
FOR LEAVE TO AMEND SECOND AMENDED
COMPLAINT - 6

1    Thus, while the Ninth Circuit's reasoning presupposed the existence of a valid

2    contract, the mandate itself does not categorically preclude Smart Apparel from

3    amending to re-assert the claims of promissory estoppel and implied contract in fact.

4

5    **B.  The Law of the Case**

6    The law of the case doctrine provides "a court is generally precluded from

7    reconsidering an issue that has already been decided by the same court, or a higher

8    court in the identical case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993). It is a

9    judicial doctrine that aims to promote the efficiency of the courts, but it is not mandatory;

10   the court retains ultimate discretion in determining whether to apply it. *Hall*, 697 F.3d at

11   1067. It applies to issues "decided explicitly or by necessary implication." *United States*

12   *v. Lummi Nation*, 763 F.3d 1180, 1185 (9th Cir. 2014). If applied, exceptions only exist

13   for clear error, intervening changes in the law, or substantially different evidence

14   introduced on remand. *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). The mandate

15   rule is broader than the law of the case doctrine. *Hall,* 697 F.3d at 1067.

16   The Court may depart from the law of the case doctrine if there are "changed

17   circumstances" or to remedy "manifest injustice." *Thomas,* 983 F.2d at 155.

18   Under Fed. R. Civ. P. 8(d)(2), "[a] party may set out 2 or more statements of a claim

19   or defense alternatively or hypothetically, either in a single count or defense or in

20   separate ones" and "[i]f a party makes alternative statements, the pleading is sufficient if

21   any one of them is sufficient." And, under Fed. R. Civ. P. 8(d)(3), "[a] party may state as

22   many separate claims or defenses as it has, regardless of consistency."

23

24

25   ORDER GRANTING SMART APPAREL'S MOTION
     FOR LEAVE TO AMEND SECOND AMENDED
     COMPLAINT - 7

1      A claim of breach of contract, and in the alternative, a breach of the implied

2   covenant of good faith and fair dealing, may be pled as alternative theories as long as

3   the plaintiff pleads all elements of each cause of action. *Jimenez v. GEICO Gen. Ins.*

4   *Co.,* 448 F. Supp. 3d 1108, 1113 (D. Nevada 2020). Similarly, if plaintiff asserts breach

5   of contract, and as an alternative theory, promissory estoppel, unjust enrichment,

6   quantum meruit, quasi contract, or implied contract, these may be pleaded when it is

7   unclear whether the parties' contract does, or does not, cover some of the allegations.

8   *Pauwels v. Deloitte LLP,* 83 F.4th 171, 187-88 (2d Cir. 2023); *Steward Partners Glob.*

9   *Advisory, LLC v. Tucker,* No. 23-CV-6532 (JGLC), 2024 WL 4202697, at *7-8 (S.D.N.Y.

10  Sept. 16, 2024).

11     To prove breach of contract, plaintiff must show a valid agreement existed, the

12  agreement was breached, and as a result, the plaintiff was damaged. *Univ. of*

13  *Washington v. Gov't Employees Ins. Co.,* 200 Wn App. 455, 467 (2017). Unless there

14  are disputed material facts, questions regarding intent of the contracting parties and

15  interpretation of contract provisions are questions of law under the context rule applied

16  by the Washington Supreme Court. *Matter of Est. of Petelle,* 195 Wn.2d 661, 665

17  (2020); *see also Berg v. Hudesman,* 115 Wn.2d 657, 671 (1990).

18     In its Order on Nordstrom's Motion to Dismiss, this Court stated: "A valid contract

19  governed the conduct alleged by Smart Apparel in the amended complaint. Therefore,

20  the amended complaint fails to allege a claim for promissory estoppel or breach of

21  contract implied in fact." Dkt. 36 at 13.[2] Smart Apparel appealed the Court's order and

22

23  _____
    [2] Smart Apparel argues that: "This Court's only basis for dismissing the quasi-contract claims was that it
    presumed at the pleading stage that all cancelled orders were covered by binding contractual agreements.

24  . . That presumption is not a final determination in any sense. (Indeed, if it were, then the law of the case
    doctrine would apply to that finding, it would be settled that all orders are subject to enforceable contracts,

25

judgment dismissing the case, including all orders relating to the judgment. Plaintiff did not appeal only a portion of the trial court's decision; the entire Judgment was identified as the decision being appealed from. Dkt. 42; *see* Federal Rule of Appellate Procedure 3(c)(1), (6) (appellant must identify the judgment being appealed from, and if only part of the judgment or order is being appealed from, the appellant may "expressly state that the notice of appeal is so limited.")

Smart Apparel asserts that Nordstrom, in the Answer (Dkt. 56) to the Second Amended Complaint (Dkt. 53), seems to be advancing a theory that categories two and three — certain hard orders and replenishment orders, for which no final purchase order had been issued at the time of Nordstrom's cancellation — were not governed by the Terms and Conditions. Dkt. 56 ¶¶31, 39; *see* Dkt. 63-1, proposed Third Amended Complaint at 22-23. This Court's prior dismissal necessarily determined the Terms and Conditions governed the conduct alleged by Smart Apparel. Dkt. 36 at 13.

Plaintiff filed a Second Amended Complaint after the remand from the Ninth Circuit, and specifically reserved the right to include the promissory estoppel and implied contract claims, if circumstances changed.

It is unclear whether the law of the case applies in this situation, because plaintiff's notice of appeal specifically stated plaintiff was appealing this Court's entire Judgment and was not an appeal of only part of the Judgment. Even if the Court were to analyze

---

and Nordstrom would be precluded from litigating that issue)." Dkt. 63 at 7. In the defendant's motion to dismiss, Nordstrom argued it "was authorized to cancel Smart Apparel's orders." Dkt. 19 at 14. It did not differentiate the final purchase orders from the other orders. Smart Apparel also referred to "orders" in its response to the motion to dismiss, rather than differentiating final purchase orders from other orders. Dkt. 30 at 16. The only context where the three categories of order are mentioned is in the section where plaintiff asserts it is pleading in the alternative. Dkt. 30 at 33.

ORDER GRANTING SMART APPAREL'S MOTION
FOR LEAVE TO AMEND SECOND AMENDED
COMPLAINT - 9

this under the law of the case doctrine, circumstances have changed, and the parties may have a dispute about whether the contract provisions apply to some or all of the transactions identified as category two (hard orders) and category three (replenishment orders). Because the circumstances have changed, the Court declines to apply the law of the case doctrine. *Thomas,* 983 F.2d at 155*; see Askins v. U.S. Dep't of Homeland Sec.,* 899 F.3d 1035, 1043 (9th Cir. 2018) ("…[W]here a final legal determination has been made by a higher court, or by the district court in the same or a related case, the law of the case doctrine allows the court to impose a heightened burden on the plaintiff – to show clear error, changed law, new evidence, changed circumstances, or manifest injustice.").

Also, discovery may reveal legal and factual theories not previously briefed or considered when the Court decided the Fed. R. Civ. P. 12(b)(6) motion – for example, evidence clarifying the scope and interpretation of the Terms and Conditions, and the nature of the various transactions and categories of transactions at issue. To deny plaintiff the opportunity to amend the complaint at this juncture would be a manifest injustice, because fulsome discovery might be discouraged if these alternative claims are left out of the operative complaint.

## C. Futility Under Washington Law

Washington courts have held promissory estoppel and implied in fact contract claims are unavailable where an express contract governs the same subject matter. *Klinke*, 94 Wn.2d at 261 n.4 ("Promissory estoppel implies a contract from [a] unilateral, otherwise unenforceable promise and is wholly inapplicable where [an] actual contract exists."); *Chandler,* 591 Wn.2d at 604 ("A party to a valid express contract is bound by the

ORDER GRANTING SMART APPAREL'S MOTION
FOR LEAVE TO AMEND SECOND AMENDED
COMPLAINT - 10

provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract.").

This Court ruled, on the defendant's motion to dismiss, that the Terms and Conditions govern the conduct alleged by Smart Apparel, including all categories of orders. Dkt. 36 at 13.

Still, Smart Apparel plausibly alleges facts (Dkt. 63-1, proposed Third Amended Complaint at 22-24) identifying a theory of the case in which some transactions may fall within a claim for promissory estoppel or contract implied in fact. Nordstrom's Answer (Dkt. 56) signals there may be such a dispute. *See* Dkt. 63 at 4 (comparing Second Amended Complaint with Nordstrom's Answer). The issues could include disputes of law and disputes of fact, and the promissory estoppel and implied contract theories might not be barred, possibly supplying a remedy for those specific dealings. *Miller*, 845 F.2d at 214 (holding that futility turns on whether any set of facts could support a valid claim).

### III.    Conclusion

For all these reasons, plaintiff's Motion for Leave to Amend the Second Amended Complaint (Dkt. 63) is GRANTED. The Third Amended Complaint will be allowed as the operative complaint. The Court declines to apply the law of the case doctrine.

**IT IS SO ORDERED.**

Dated this 26th day of September, 2025.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge